1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

HONORABLE BENJAMIN H. SETTLE

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| WASTE ACTION PROJECT, | ) |
| Plaintiff, | )   No. 12-05102 |
| v. | )   CONSENT DECREE |
| QUIGG BROTHERS, INC., | ) |
| Defendants. | ) |

## I.   STIPULATIONS

Plaintiff Waste Action Project sent sixty day notice of intent to sue letters to defendant Quigg Brothers, Inc. ("Quigg Bros.") on or about November 23, 2011, and December 7, 2011, and filed a complaint on February 7, 2012, alleging violations of the Clean Water Act, 33 U.S.C. § 1251 et seq., relating to discharges of stormwater from Quigg Bros.' facility in Aberdeen, Washington and seeking declaratory and injunctive relief, civil penalties and attorneys fees and costs.

As a result of Waste Action Project's notice letter and complaint, Quigg Bros. took various actions to improve the quality of stormwater leaving its property, including the purchase

[PROPOSED] CONSENT DECREE: No. 12-05102-BHS
p. 1
QUI001 0099 oc19cj197e

SMITH & LOWNEY, P.L.L.C.
2317 EAST JOHN ST.
SEATTLE, WASHINGTON 98112
(206) 860-2883

1   and installation of a stormwater treatment system, implementation of erosion controls,

2   housekeeping, recordkeeping, employee training, and stormwater monitoring at three additional

3   discharge locations.  Quigg Bros. spent over $650,000 on these efforts.

4          Waste Action Project and Quigg Bros. agree that settlement of these matters is in the best

5   interest of the parties and the public, and that entry of this Consent Decree is the most appropriate

6   means of resolving this action.

7          Waste Action Project and Quigg Bros. stipulate to the entry of this Consent Decree

8   without trial, adjudication, or admission of any issues of fact or law regarding Waste Action

9   Project's claims or allegations set forth in its complaint and its sixty-day notice.

10

11  Dated this *19TH* day of **MARCH**, 2013          Dated this 19th day of March, 2013

12  Quigg Brothers, Inc.                               Waste Action Project

13

14  By _____                      By _____
        John Quigg                                         Greg Wingard
15      President                                          Executive Director

16                          II.      ORDER AND DECREE

17          THIS MATTER came before the Court upon the foregoing Stipulations of the parties.

18  Having considered the Stipulations and the promises set forth below, the Court hereby ORDERS,

19  ADJUDGES, and DECREES as follows:

20

21          1.      This Court has jurisdiction over the parties and subject matter of this action.

22          2.      Each signatory for the parties certifies for that party that he or she is authorized to

23  enter into the agreements set forth below.

24          3.      This Consent Decree applies to and binds the parties and their successors and

25  assigns.

26

[PROPOSED] CONSENT DECREE: No. 12-05102-BHS          SMITH & LOWNEY, P.L.L.C.
p. 2                                                      2317 EAST JOHN ST.
                                                    SEATTLE, WASHINGTON 98112
QUI001 0099 oc19cj197c                                   (206) 860-2883

4.    This Consent Decree and any injunctive relief ordered within will apply to the operation, oversight, or both by Defendant Quigg Brothers, Inc. of its facility at or about 1021 River Street, Aberdeen, WA 98520, which is subject to National Pollutant Discharge Elimination System Permit No. WAR003948 (the "NPDES permit"), and comprises Areas A, B, C, and D, delineated on **Attachment A** to this Consent Decree.

5.    This Consent Decree is a full and complete settlement and release of all the claims in the complaint, the sixty-day notice and all other claims known and unknown, contingent or otherwise, for any acts or omissions, existing as of the date of entry of this Consent Decree, that could be asserted under the Clean Water Act, 33 U.S.C. §§ 1251-1387, arising from operations of the Facility (Lots A, B, C, and D as delineated on **Attachment A**) against Quigg Bros., its subsidiaries, employees, agents, successors and assigns. These claims are released and dismissed with prejudice.

6.    Quigg Bros. was in violation of its National Pollutant Discharge Elimination System Permit when Waste Action Project issued its 60-day Notices of Intent to Sue.

7.    Quigg Bros agrees to the following terms and conditions in full and complete satisfaction of all the claims covered by this decree:

    a.    Quigg Bros. will comply fully with all conditions of its *NPDES permit* and any successor, modified, or replacement permit authorizing discharges of stormwater associated with industrial activity from the facility;

    b.    For a period of three (3) years after the entry of the decree, Quigg Bros. shall, on a quarterly basis, forward to Waste Action Project copies of all communications to or from Ecology related to its *NPDES permit* or stormwater discharges from the facility;

[PROPOSED] CONSENT DECREE: No. 12-05102-BHS
p. 3
QUI001 0099 oc19cj197e

SMITH & LOWNEY, P.L.L.C.
2317 EAST JOHN ST.
SEATTLE, WASHINGTON 98112
(206) 860-2883

c.      Quigg Bros. will continue to retain a qualified stormwater consultant to update its stormwater pollution prevention plan ("SWPPP") to meet the requirements of the *NPDES permit*. Within thirty (30) days of the entry of this Consent Decree, Quigg Bros. will update its SWPPP to remove outdated provisions and to include the following elements:

i.      Provisions that address discharges and sampling from Areas B, C, and D, including outfalls XSW, USW, and WSW;

ii.     If mobile fueling activities are conducted on the facility, the SWPPP must include a description of mobile fueling activities and associated pollutants, the location(s) where mobile fueling takes place, and operational and structural source control best management practices for mobile fueling, including drip pans and spill kits aboard Quigg Bros.' fueling truck;

iii.    A map that identifies all material storage areas, including pilings storage at Area B;

iv.     A specific schedule for maintenance and cleaning of the stormwater conveyance system, including catch basin socks, the detention trench, vaults, manholes, check dams and ditches;

v.      The operations and maintenance manual for, and the identities of the authorized operators of the Chitosan-enhanced sand filtration system;

vi.     Enhanced monitoring of stormwater discharges for a period of three (3) years, including collection and analysis of eight (8) samples per year from each monitoring location (including outfalls ZSW, XSW, USW, and WSW), with no fewer than two samples from each monitoring location each

[PROPOSED] CONSENT DECREE: No. 12-05102-BHS
p. 4

QUI001 0099 oc19cj197c

SMITH & LOWNEY, P.L.L.C.
2317 EAST JOHN ST.
SEATTLE, WASHINGTON 98112
(206) 860-2883

1   quarter there is a discharge.  However, this requirement shall not apply to

2   quarters during which there are not at least two (2) discharge events during

3   normal business hours;

4       d.      Within one hundred twenty (120) days of entry of this Consent Decree

5   and as soon as practicable, Quigg Bros. will implement a SWPPP updated in

6   accordance with paragraph 7.c.;

7

8       f.      Not earlier than thirty (30) days after entry of this Consent Decree, and

9   upon Waste Action Project's request, Quigg Bros. will allow WAP's representative and/or

10  a mutually agreeable stormwater consultant reasonable access to the facility up to twice

11  per year, for the next three (3) years, for the purpose of reviewing implementation of the

12  SWPPP, inspecting the facility and reporting findings to the Parties;

13

14          i.      Inspections will occur at a mutually agreeable date and time;

15          ii.     Inspections may include stormwater sampling;

16      g.      Quigg Bros. stormwater discharge will not exceed 25 nephelometric

17  turbidity units, 14 µg/L total copper, or 117 µg/L total zinc; and will not exhibit a visible

18  oil sheen or a pH outside the range of 5.0 – 9.0 standard units in any sample collected

19  from any monitoring location or any point of discharge offsite;

20      h.      Within ninety (90) days of receipt of sample result that violates

21  subparagraph g. of this paragraph 7, Quigg Bros. will retain a qualified stormwater

22  consultant to evaluate the cause of the violation and recommend measures consistent with

23  the Permit to eliminate similar violations in future discharges; report the samples results

24  and consultant's recommendations to Waste Action Project; and fully incorporate the

25  consultant's recommendations into its SWPPP, along with a schedule for implementing

26

[PROPOSED] CONSENT DECREE: No. 12-05102-BHS
p. 5
QUI001 0099 oc19cj197e

SMITH & LOWNEY, P.L.L.C.
2317 EAST JOHN ST.
SEATTLE, WASHINGTON 98112
(206) 860-2883

1    the recommendations as soon as practicable;

2        8.   Within thirty (30) days of entry of this Consent Decree, Quigg Bros. will pay fifty

3 thousand dollars ($50,000) to the Rose Foundation for projects to improve the water quality of the

4 Chehalis River Watershed and the Grays Harbor Estuary as described in **Attachment B** this

5 Consent Decree. Checks will be made to the order of and delivered to:  The Rose Foundation for

6 Communities and the Environment, Attn: Tim Little, 6008 College Avenue, Ste. 10, Oakland, CA

7 94618. Payment will include the following reference in a cover letter or on the check: "Consent

8 Decree, Waste Action Project v. Quigg Bros., Inc." A copy of the check and cover letter, if any,

9

10 will be sent simultaneously to Waste Action Project and its counsel.

11        9.   Within thirty (30) days of entry of this Consent Decree by the Court,

12 Defendant shall pay Plaintiff's actual litigation fees, expenses, and costs (including reasonable

13 attorney and expert witness fees) incurred in this matter in the amount of two hundred

14 thousand dollars ($200,000.00) by check payable and mailed to Smith & Lowney, PLLC,

15 2317 East John St., Seattle, WA 98112, attn: Knoll Lowney.  Plaintiff's counsel has

16

17 represented and certified under oath that it has actually incurred such fees, expenses and costs

18 in this Litigation, and that such fees, expenses, and costs are just, proper, fully and accurately

19 documented, and appropriate under the law.  Defendant's payment shall be in full and

20 complete satisfaction of any claims Plaintiff has or may have, either legal or equitable, and of

21

22 any kind or nature whatsoever, for fees, expenses, and costs incurred in the Litigation.

23        10.   A force majeure event is any event outside the reasonable control of Quigg

24 Bros. that causes a delay in performing tasks required by this decree that cannot be cured by

25 due diligence. Delay in performance of a task required by this decree caused by a force

26 majeure event is not a failure to comply with the terms of this decree, provided that Quigg

SMITH & LOWNEY, P.L.L.C.
2317 EAST JOHN ST.
SEATTLE, WASHINGTON 98112
(206) 860-2883

Bros. notifies Waste Action Project of the event; the steps that Quigg Bros. will take to perform the task; the projected time that will be needed to complete the task; and the measures that have been taken or will be taken to prevent or minimize any impacts to stormwater quality resulting from delay in completing the task.

Quigg Bros. will notify Waste Action Project of the occurrence of a force majeure event as soon as reasonably possible but, in any case, no later than fifteen days after the occurrence of the event. In such event, the time for performance of the task will be extended for a reasonable period of time following the force majeure event.

By way of example and not limitation, force majeure events include

    a.     Acts of God, war, insurrection, or civil disturbance;

    b.     Earthquakes, landslides, fire, floods, drought;

    c.     Actions or inactions of third parties over which defendant has no control;

    d.     Restraint by court order or order of public authority;

    e.     Strikes;

    f.     Any permit or other approval sought by Quigg Bros. from a government authority to implement any of the actions required by this consent decree where such approval is not granted or is delayed, and where Quigg Bros. has timely and in good faith sought the permit or approval; and

    g.     Litigation, arbitration, or mediation that causes delay.

11.    The Court will retain jurisdiction over this matter and allow this case to be reopened without filing fee for the purpose of enabling the parties to apply to the Court for any further order that may be necessary to construe, carry out, enforce compliance and/or resolve any substantive dispute regarding the terms or conditions of this Consent Decree until

[PROPOSED] CONSENT DECREE: No. 12-05102-BHS
p. 7
QUI001 0099 oc19cj197e

SMITH & LOWNEY, P.L.L.C.
2317 EAST JOHN ST.
SEATTLE, WASHINGTON 98112
(206) 860-2883

1  termination of the Consent Decree per paragraph 13.

2      In the event of a substantive dispute regarding implementation of, or compliance with,

3  this Consent Decree, the parties shall resolve the dispute as follows:

4          a.      Written Notice: The parties must first attempt to resolve the dispute by

5          serving a written notice that identifies the alleged dispute and requested

6          resolution .

7          b.      In Person Meeting: Upon the request of either party, an in person

8          meeting between the parties must take place within forty-five (45) days of

9          service of the written notice or as soon as reasonably possible. At the in person

10         meeting, the parties will make a good faith attempt to resolve the issues.

11         c.      Court Action: If no resolution is reached within thirty (30) days from the

12         date of the in person meeting, or sixty (60) days from service of the written notice,

13         whichever is earlier, the parties may file motions regarding the dispute with

14         the Court.

15     The provisions of section 505(d) of the Clean Water Act, 33 U.S.C. § 1365(d), regarding

16 awards of costs of litigation (including reasonable attorney and expert witness fees) to any

17 prevailing or substantially prevailing party, will apply to any proceedings seeking to enforce the

18 terms and conditions of this Consent Decree.

19     12.     The parties recognize that, pursuant to 33 U.S.C. § 1365(c)(3), no consent

20 judgment can be entered in a Clean Water Act suit in which the United States is not a party prior

21 to 45 days following the receipt of a copy of the proposed consent judgment by the U.S. Attorney

22 General and the Administrator of the U.S. EPA.  Therefore, upon the filing of this Consent

23 Decree by the parties, Waste Action Project will serve copies of it upon the Administration of the

[PROPOSED] CONSENT DECREE: No. 12-05102-BHS
p. 8
QUI001 0099 oc19cj197e

SMITH & LOWNEY, P.L.L.C.
2317 EAST JOHN ST.
SEATTLE, WASHINGTON 98112
(206) 860-2883

1   U.S. EPA and the Attorney General, with copy to Quigg Bros.

2       13.     This Consent Decree will take effect upon entry by this Court.  It terminates three

3   years after that date, or 90 days after the parties' completion of all obligations imposed by this

4   Decree, whichever is later.

5       14.     Both parties have participated in drafting this decree.

6

7       15.     This Consent Decree may be modified only upon the approval of the Court.

8       16.     If for any reason the court should decline to approve this Consent Decree in the

9   form presented, this Consent Decree is voidable at the discretion of either party.  The parties

10  agree to continue negotiations in good faith in an attempt to cure any objection raised by the court

11  to entry of this Consent Decree.

12      17.     Notifications required by this Consent Decree must be in writing.  The sending

13  party may use any of the following methods of delivery: (1) personal delivery; (2) registered or

14  certified mail, in each case return receipt requested and postage prepaid; (3) a nationally

15  recognized overnight courier, with all fees prepaid; or (4) e-mail.  For a notice or other

16

17  communication regarding this decree to be valid, it must be delivered to the receiving party at the

18  one or more addresses listed below or to any other address designated by the receiving party in a

19  notice in accordance with this paragraph 17;

20

21      **if to Waste Action Project:**

22

23      Waste Action Project
        PO Box 4832
24      Seattle 98194-0832
        email: gwingard@earthlink.net

25

26      **and to:**

[PROPOSED] CONSENT DECREE: No. 12-05102-BHS
p. 9

QUI001 0099 oc19cj197c

SMITH & LOWNEY, P.L.L.C.
2317 EAST JOHN ST.
SEATTLE, WASHINGTON 98112
(206) 860-2883

1

2

3

Claire Tonry
Smith & Lowney PLLC
2317 East John St.
Seattle, WA  98112
email: clairet@igc.org

4

5

**if to Quigg Bros.**

6

7

John Quigg
PO Box 1707
Aberdeen, WA 98520

8

**and to:**

9

10

11

Jeffrey Laveson
Carney Badley Spellman
701 Fifth Avenue
Seattle, WA 98104-7010

12          A notice or other communication regarding this Consent Decree will be effective when

13   received unless the notice or other communication is received after 5:00 p.m. on a business day,

14   or on a day that is not a business day, then the notice will be deemed received at 9:00 a.m. on the

15   next business day.  A notice or other communication will be deemed to have been received: (a) if

16   it is delivered in person or sent by registered or certified mail or by nationally recognized

17   overnight courier, upon receipt as indicated by the date on the signed receipt; or (b) if the

18

19   receiving party rejects or otherwise refuses to accept it, or if it cannot be delivered because of a

20   change in address for which no notice was given, then upon that rejection, refusal, or inability to

21   deliver; or (c) for notice provided via e-mail, upon receipt of a response by the party providing

22   notice or other communication regarding this Consent Decree.

23

24

25

26

[PROPOSED] CONSENT DECREE: No. 12-05102-BHS
p. 10
QUI001 0099 oc19cj197e

SMITH & LOWNEY, P.L.L.C.
2317 EAST JOHN ST.
SEATTLE, WASHINGTON 98112
(206) 860-2883

1

2 DATED this 16 day of May , 2013.

3

4

5 HON. BENJAMIN H. SETTLE

6 UNITED STATES DISTRICT JUDGE

7 Presented by:

8

9 Carney Badley Spellman               Smith & Lowney PLLC

10 By s/                               By: /s/
11 Jeffrey D. Laveson, WSBA No. 16351      Knoll D. Lowney, WSBA No. 23457
   Attorneys for Defendant            By: /s/
12 701 Fifth Ave., Suite 3600             Claire E. Tonry, WSBA No. 44497
   Seattle, WA 98104-7010            Attorneys for Plaintiff
13 (206) 622-8020                     2317 E. John St.
   Fax: (206) 467-8215               Seattle, WA 98112
14 laveson@carneylaw.com             (206) 860-2883
                                     Fax: (206) 860-4187
15                                    knoll@igc.org, clairet@igc.org

16

17

18

19

20

21

22

23

24

25

26

[PROPOSED] CONSENT DECREE: No. 12-05102-BHS
p. 11

QUI001 0099 oc19cj197e

SMITH & LOWNEY, P.L.L.C.
2317 EAST JOHN ST.
SEATTLE, WASHINGTON 98112
(206) 860-2883

Attachment A

Attachment B

# THE ROSE FOUNDATION

For Communities & the Environment


3/19/13

Sarah Lu
Environment & Natural Resources Division
Law and Policy Section
P.O. Box 7415
Ben Franklin Station
Washington, D.C. 20044-7415

Re: Waste Action Project et al v. Quigg Brothers, Inc. 12-05102

Dear Ms. Lu,

This letter is intended to provide assurance that I have received the proposed Consent Decree between the Waste Action Project and Quigg Brothers, Inc. and that I am authorized by my Board of Directors to make the following binding commitments on behalf of the Rose Foundation.

1) I understand that the Rose Foundation should receive funds from Quigg Brothers, Inc. as specified in the Consent Decree.

2) The Rose Foundation shall only use these Quigg Brothers, Inc. funds to support projects intended to improve the water quality of the Chehalis River Watershed and the Grays Harbor Estuary.

3) After the funds have been disbursed, the Rose Foundation shall send a report to the Justice Department, the court and the parties describing how the funds were utilized and demonstrating conformance with the nexus of the Consent Decree.

**Rose Foundation for Communities and the Environment**

The Rose Foundation is a 501(c)(3) public charity (tax ID#94-3179772). Its mission is to support grassroots initiatives to inspire community action to protect the environment, consumers and public health. To fulfill this mission, the Rose Foundation conducts the following activities:

- Raise money to award as grants to qualified non-profit organizations conducting charitable operations. The Foundation does not fund political lobbying activities prohibited by Section 501(c)(3) of the IRS Code.

- Work directly in schools and in the community to encourage environmental stewardship and civic participation.

- Help government efforts to control pollution and protect the environment by encouraging community engagement in local, state and federal research and policy development.

Within this broad range of activities, all of the Rose Foundation's work revolves around one or more of the following strategic themes:

- Build and maintain a bridge between the community and organized philanthropy.
- Protect the natural environment, public health, and community and consumer rights.
- Promote collaboration between labor, environmental, business, consumer and social interests.
- Cultivate a new generation of environmental stewards and social policy leaders.
- Respect the inalienable rights protected by our nation's constitution, and the essential human rights to clean air, clean water, and individual dignity and privacy.

The Rose Foundation is governed by a Board of Directors. Grant applicants are required to submit written proposals, which must include at a minimum specific information about the goals, activities and projected outcomes of the proposed project, background about the charitable applicant, budget information, and a specific funding request. The Foundation may require additional information in order to fully evaluate the application. Applications are first screened by Foundation staff. Staff then makes recommendations to the Foundation Board for action. The Foundation requires all projects to submit written reports within one year of receipt of the grant award describing work conducted under the grant, thereby providing an accountability mechanism over funds awarded. Annual audits by the certified public accounting firm Levy and Powers are posted on the Foundation's website www.rosefdn.org.

I hope this provides you with the information you require. Please do not hesitate to contact me with any questions, or for additional information at (510) 658-0702 or tlittle@rosefdn.org.

Sincerely,

Tim Little, Executive Director

2